## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 0:22-CV-62018-DIMITROULEAS/AUGUSTIN-BIRCH

**KEITH A. CLAYBORNE,**

     **Plaintiff,**

**v.**

**GOLDEN KRUST FRANCHISING, INC.,**
**doing business as Golden Krust**
**Caribbean Bakery & Grill,**

     **Defendant.**

_____/

## REPORT AND RECOMMENDATION ON MOTION TO DISMISS [12]

The Honorable William P. Dimitrouleas, United States District Judge, referred this matter to the undersigned United States Magistrate Judge for appropriate disposition or report and recommendation on Defendant Golden Krust Franchising, Inc.'s Motion to Dismiss.  DE 12 and 23.  The Motion to Dismiss is fully briefed, Plaintiff Keith A. Clayborne having filed a Response [DE 15] and Defendant having filed a Reply [DE 20].  The Court has carefully considered the briefing and the record and is otherwise fully advised in the premises.  For the reasons set forth below, the Court recommends that the Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART**.

### I.  BACKGROUND

Plaintiff filed a two-count Complaint for a declaratory judgment and for fraudulent inducement.  DE 1.  Plaintiff alleges in the Complaint that Defendant is a corporation that franchises restaurants, which Plaintiff calls "GK Restaurants."  *Id.* at 1.  Plaintiff, his family, and entities that he and his family owned or managed previously operated numerous GK Restaurants

in South Florida.  *Id.* ¶¶ 7-10.  Plaintiff entered into a Franchise Agreement with Defendant to operate each GK Restaurant.  *Id.* ¶¶ 11-15.

Each Franchise Agreement contained an arbitration provision.  Because the precise language of the arbitration provisions is central to the parties' arguments in the briefing of the Motion to Dismiss, the Court reproduces that language in full:[1]

> Except for controversies, disputes or claims related to or based on your use of the marks after the expiration or termination of this agreement, all controversies, disputes or claims between us and our shareholders, officers, directors, agents and employees and you (your owners, guarantors, affiliates and employees, if applicable) arising out of or related to:
>
> (1)     This Agreement or any other agreement between you and us or any provision of any such agreement;
>
> (2)     Our relationship with you;
>
> (3)     The validity of this agreement or any other agreement between you and us or any provision of any such agreement; or
>
> (4)     Any system standard relating to the establishment or operation of the Restaurant will be submitted for arbitration to the White Plains, New York office of the American Arbitration Association on demand of either party.  Such arbitration proceedings will be conducted at White Plains, New York and, except as otherwise provided in this agreement, will be heard by one arbitrator in accordance with the then current commercial arbitration rules of the American Arbitration Association.  All matters relating to arbitration will be governed by the Federal Arbitration Act (9 U.S.C. §§ 1 se seq.) and not by any state arbitration law.
>
> The arbitrator will have the right to award or include in his award any relief which he deems proper in the circumstances, including, without limitation, money damages (with interest on unpaid amounts from the date due), specific performance, injunctive relief and attorneys' fees and costs, provided that the arbitrator will not have the right to declare any mark generic or otherwise invalid or, except as otherwise provided in paragraph I of this section, to award exemplary or punitive damages.  The award and decision of the arbitrator will be conclusive and binding upon all parties hereto, and judgment upon the award may be entered in any court of competent jurisdiction.
>
> Notwithstanding anything to the contrary contained in this paragraph, we and you each have the right in a proper case to obtain temporary restraining orders

---

[1] Neither party contends that the arbitration provisions in the Franchise Agreements at issue varied in any way.

and temporary or preliminary injunctive relief from a court of competent jurisdiction; provided, however, that we and you must contemporaneously submit our dispute for arbitration on the merits as provided herein.

DE 1-1 at 28-29.

Plaintiff alleges in the Complaint that Defendant had "discriminatory pricing and fee schemes" because it discriminated in favor of GK Restaurants that Defendant's principals and their relatives owned (referred to in the Complaint as "Family-Owned Franchises") in two ways. DE 1 ¶ 25. First, Family-Owned Franchises could purchase food for GK Restaurants from one of Defendant's affiliates at a reduced cost, whereas Plaintiff had to purchase the same food from a third-party vendor at a higher price. *Id.* ¶¶ 29-30. Second, Family-Owned Franchises paid lower royalty rates than Plaintiff paid and, unlike him, did not pay advertising fees. *Id.* ¶¶ 36-39. These two practices gave Family-Owned Franchises an unfair competitive advantage at Plaintiff's expense. *Id.* ¶ 41.

As Count I of the Complaint, Plaintiff seeks a declaration as to whether the arbitration provisions in the Franchise Agreements are enforceable due to their restriction on an arbitrator awarding exemplary or punitive damages. *Id.* ¶¶ 47-50. Plaintiff raises a claim of fraudulent inducement as Count II, alleging that Defendant induced him to enter into the Franchise Agreements with the material misrepresentation that Defendant would impose all fees uniformly. *Id.* ¶¶ 52-59.

Defendant now moves to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, arguing that, under the Franchise Agreements' terms, Plaintiff must submit his claims to arbitration. In the event the District Court does not send Plaintiff's claims to arbitration, Defendant moves to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.  ANALYSIS

In Section A of this Report and Recommendation, the Court discusses the language of the Franchise Agreements' arbitration provisions and concludes that the language requires the parties to arbitrate the claims Plaintiff pled in the Complaint.  In Section B, the Court addresses what should happen to this case while the parties are arbitrating and recommends that the District Court stay, rather than dismiss, the case.

### A.  The Franchise Agreements' Arbitration Provisions

Under the Federal Arbitration Act ("FAA"), a "contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof" is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  A "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may petition a district court "for an order directing that such arbitration proceed in the manner provided for in such agreement."  *Id.* § 4.  Courts "must rigorously enforce arbitration agreements according to their terms."  *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quotation marks omitted).

In a "classic arbitration agreement," the parties agree to arbitrate the merits of any claims arising from a contract.  *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1294 (11th Cir. 2022).  Sometimes, in addition to agreeing to arbitrate the merits of claims, the parties agree "to arbitrate any threshold or gateway questions about the arbitrability of those claims, such as questions about the enforceability, scope, or applicability of the parties' agreement to arbitrate their claims."  *Id.* at 1295 (alteration and quotation marks omitted) (referring to an agreement to arbitrate threshold questions about arbitrability as a "delegation agreement").  A court normally

4

decides threshold disputes about whether a party's claims are arbitrable.  *Id.*  However, the FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019).  "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract.  In those circumstances, a court possesses no power to decide the arbitrability issue."  *Id.* at 529.  A court should not assume that parties agreed to arbitrate arbitrability unless there exists "clear and unmistakable evidence that they did so," and the court should resolve ambiguities in a delegation agreement in favor of the party opposing arbitration.  *Attix*, 35 F.4th at 1295-96 (quotation marks omitted).

As Count I of the Complaint, Plaintiff seeks a declaration as to whether the arbitration provisions in the Franchise Agreements are enforceable.  In the briefing of the Motion to Dismiss, the parties dispute whether that issue—the arbitration provisions' enforceability—must itself be arbitrated.  Defendant argues that the issue must be arbitrated for two reasons based on the arbitration provisions' language.  First, the arbitration provisions state that the "validity of this agreement . . . or any provision of any such agreement . . . will be submitted for arbitration." DE 1-1 at 28.  Second, the arbitration provisions state that "arbitration proceedings . . . will be heard by one arbitrator in accordance with the then current commercial arbitration rules of the American Arbitration Association," and those rules give arbitrators the authority to resolve questions concerning the existence, scope, and validity of arbitration agreements.  *Id.*

### 1. Delegation of Questions of the Arbitration Provisions' Validity

Again, the Franchise Agreements' arbitration provisions state that the "validity of this agreement . . . or any provision of any such agreement . . . will be submitted for arbitration."  *Id.*

Plaintiff makes two arguments why this language does not require arbitration of his challenge to the enforceability of the arbitration provisions.  Neither argument persuades the Court.

As his first argument, Plaintiff points out that the language states that issues concerning the validity of the Franchise Agreements' provisions "will be submitted" to arbitration, but does not state that arbitration "*shall* be the *exclusive* forum" to adjudicate such issues.  DE 15 at 6 (emphasis in original).  According to Plaintiff, the language "does not clearly demonstrate that the sole venue to litigate" is arbitration.  *Id.*  Courts addressing similarly worded arbitration agreements, using the word "will" rather than "shall" and/or providing for the submission of disputes to arbitration, have required arbitration.  *E.g., Spirit Airlines, Inc. v. Maizes*, 899 F.3d 1230, 1232 (11th Cir. 2018) (affirming an order requiring arbitration where the parties' contract provided, "Any dispute arising between Members and Spirit will be resolved by submission to arbitration . . . ."); *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1145 (11th Cir. 2015) (reversing with instructions for the district court to compel arbitration where the parties' contract provided, "You agree that any Dispute . . . will be resolved by Arbitration . . . ."); *Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F. Supp. 3d 1284, 1293-95 (S.D. Fla. 2017) (granting a motion to compel arbitration of claims where the parties' contract provided, "All controversies, disputes or claims arising between the parties to this Agreement . . . shall be submitted for arbitration . . . .").  While the Franchise Agreements' arbitration provisions do reserve *something* for resolution in court—a request for "temporary restraining orders and temporary or preliminary injunctive relief"— Plaintiff has made no such request in this litigation.  DE 1-1 at 29.  Plaintiff's contention that arbitration is not the mandatory, exclusive forum for his challenge to the arbitration provisions is unavailing.

As his second argument, Plaintiff asserts that Defendant fraudulently induced him to enter into the Franchise Agreements, including the arbitration provisions and their delegation agreements.   DE 15 at 7.   Plaintiff cites no authority to demonstrate why such fraudulent inducement, if it occurred, would relieve him of a delegation agreement.   "[W]here an arbitration agreement contains a delegation provision—committing to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable—the courts only retain jurisdiction to review a challenge to that specific provision."   *Parnell*, 804 F.3d at 1144 (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010)); *see also Attix*, 35 F.4th at 1302 ("[T]o overcome a delegation agreement, a party must challenge the validity or enforceability of the parties' precise agreement to arbitrate threshold arbitrability issues.").   "When an arbitration agreement contains a delegation provision and the plaintiff raises a challenge to the contract *as a whole*, the federal courts may not review his claim because it has been committed to the power of the arbitrator."   *Parnell*, 804 F.3d at 1146 (emphasis in original).

The Supreme Court has explained how these principles apply in the context of a claim of fraudulent inducement:

> [I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the making of the agreement to arbitrate—the federal court may proceed to adjudicate it.  But the [FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract generally.

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967) (footnote and quotation marks omitted).  If Plaintiff contended that Defendant fraudulently induced him to enter into the arbitration provisions or the delegation agreements specifically, the District Court could resolve that issue.  However, Plaintiff has not made such a contention.  He has instead alleged in the Complaint and argued in his Response to the Motion to Dismiss that Defendant fraudulently induced him to enter into the entirety of each Franchise Agreement.  The fraudulent inducement

that Plaintiff alleges does not relieve him of the agreement to arbitrate the issue of the arbitration provisions' enforceability.

### 2. Arbitration in Accordance with American Arbitration Association Rules

The Franchise Agreements' arbitration provisions state that "arbitration proceedings . . . will be heard by one arbitrator in accordance with the then current commercial arbitration rules of the American Arbitration Association."   DE 1-1 at 28.   Under Rule 7(a) of the American Arbitration Association's ("AAA") Commercial Arbitration Rules and Mediation Procedures, "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court."[2]  Rule 7(a) enables an arbitrator to resolve Plaintiff's challenge to the enforceability of the Franchise Agreements' arbitration provisions.  "[I]ncorporation of AAA rules giving an arbitrator the power to rule on his or her own jurisdiction constitutes a clear and unmistakable delegation of questions of arbitrability."  *Attix*, 35 F.4th at 1298 (quotation marks omitted).  Plaintiff makes three arguments why the arbitration provisions' incorporation of AAA rules does not require arbitration of his challenge to the provisions' enforceability.  Each argument is unavailing.

First, Plaintiff contends that the arbitration provisions' reference to "then current commercial arbitration rules of the American Arbitration Association" is not sufficiently specific as to which rules apply because the language does not include a citation to a website where the relevant rules may be found or capitalize "commercial arbitration rules" to make clear that the reference is to a certain set of rules.  DE 15 at 4.  The Eleventh Circuit has concluded that language similar to that used in the arbitration provisions is sufficient to invoke Rule 7(a) of the AAA's

---

[2] American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures (Sept. 1, 2022), www.adr.org/commercial.

Commercial Arbitration Rules and to delegate questions of arbitrability to an arbitrator. *Wastecare Corp. v. Harmony Enters., Inc.*, 822 F. App'x 892, 894-96 (11th Cir. 2020) (reversing with instructions for the district court to compel arbitration where the parties' contract required claims to be "settled by arbitration in accordance with the then current commercial rules of arbitration of the American Arbitration Association"); *see also Spirit Airlines*, 899 F.3d at 1232-34 (concluding that an arbitration provision's requirement that arbitration be conducted "in accordance with the rules of the American Arbitration Association then in effect" triggered an AAA rule allowing arbitrators to resolve whether arbitration provisions permit class arbitration). The arbitration provisions' language is sufficiently specific to invoke Rule 7(a) of the AAA's Commercial Arbitration Rules.

Second, Plaintiff asserts that the arbitration provisions' language that arbitration "will be heard by one arbitrator in accordance with the then current commercial arbitration rules" may be read as incorporating only a limited subset of AAA rules—the rules requiring one arbitrator to preside over arbitration. DE 15 at 5. The Court has found no in-Circuit caselaw that might assist in resolving this argument. However, District Courts outside of this Circuit have not read language similar to that in the arbitration provisions so narrowly. For example, a District Court in the Southern District of New York interpreted contract language requiring the parties to resolve disputes through arbitration "by one arbitrator in accordance with [the AAA's] commercial arbitration rules" to "broadly incorporate the Commercial Arbitration Rules of the AAA," including Rule 7(a). *Consol. Precision Prods. Corp. v. Gen. Elec. Co.*, No. 15-CV-8721, 2016 WL 2766662, at *5-6 (S.D.N.Y. May 12, 2016) (quotation marks omitted). Similarly, a Connecticut District Court interpreted contract language requiring disputes "to be arbitrated by one arbitrator in accordance with the rules of the American Arbitration Association" to

"incorporate[] AAA rules," including Rule 7(a).  *Blake v. Loomis Armored*, No. 3:07CV1864, 2008 WL 11489020, at *1-3 (D. Conn. Apr. 15, 2008), *report and recommendation adopted*, 2008 WL 11489023 (D. Conn. May 7, 2008).  Consistent with these cases, the Court concludes that the Franchise Agreements' arbitration provisions incorporate all of the AAA's Commercial Arbitration Rules, not only the rules requiring one arbitrator.

Third, Plaintiff maintains that he is a layperson, is less sophisticated than Defendant, and might not have known from the language of the arbitration provisions that he was invoking a rule delegating questions of arbitrability to an arbitrator.  DE 15 at 5.  The Eleventh Circuit has rejected an argument that "incorporation of AAA Rules is insufficient to establish delegation in consumer contracts involving at least one unsophisticated party."  *In re Checking Acct. Overdraft Litig.*, 856 F. App'x 238, 244 (11th Cir. 2021) (quotation marks omitted).  In rejecting this argument, the Eleventh Circuit explained that "we have never distinguished between agreements involving sophisticated and unsophisticated parties, and those involving only sophisticated parties; in fact, our precedent includes cases about agreements involving unsophisticated parties."  *Id.* (citing caselaw enforcing delegation agreements between corporations and their customers).  Plaintiff's level of sophistication does not impact whether Rule 7(a) applies to require arbitration of his challenge to the enforceability of the arbitration provisions.

In conclusion, the arbitration provisions' language requires the parties to arbitrate the issue that Plaintiff raises in Count I of the Complaint concerning the enforceability of those provisions.  Plaintiff makes no argument that, if Count I is subject to arbitration, Count II nevertheless is not subject to arbitration.  Plaintiff's claim in Count II of fraudulent inducement to enter into the Franchise Agreements must be submitted to arbitration under the arbitration provisions' language that "all controversies, disputes or claims between us and our shareholders, officers, directors,

agents and employees and you (your owners, guarantors, affiliates and employees, if applicable) arising out of or related to" "[t]his Agreement" and "[o]ur relationship with you" "will be submitted for arbitration." DE 1-1 at 28. The parties must arbitrate both of the claims Plaintiff pled in the Complaint.

**B. Dismissal or Stay**

The parties next dispute what should happen to this court case if Plaintiff's claims are arbitrated, with Defendant advocating for dismissal of the case for lack of subject matter jurisdiction and Plaintiff asking that the case be stayed. A party may raise lack of subject matter jurisdiction as a defense to a pleading, and a court must dismiss an action upon determining that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1), (h)(3). "Subject matter jurisdiction defines the court's authority to hear a given type of case; it represents the extent to which a court can rule on the conduct of persons or the status of things." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citations and quotation marks omitted). "[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (quotation marks omitted). On the other hand, a party may waive its right to arbitration. *Lincoln Nat'l Life Ins. Co. v. Sussman*, 775 F. App'x 969, 972 n.4 (11th Cir. 2019). An "agreement to arbitrate does not deprive a court of subject matter jurisdiction." *Id.* Nevertheless, courts often treat motions to compel arbitration as motions under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction. *E.g., Babcock v. Neutron Holdings, Inc.*, 454 F. Supp. 3d 1222, 1228 (S.D. Fla. 2020) ("A motion to compel arbitration is treated as a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction."); *MRI Scan Ctr., LLC v. Nat'l Imaging Assocs., Inc.*, No. 13-60051-CIV, 2013 WL 1899689, at *2 (S.D. Fla. May 7, 2013)

("Moreover, courts generally treat motions to compel arbitration as motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).").

Under the FAA:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties *stay* the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).  Claims subject to arbitration should be stayed rather than dismissed. *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992) ("The district court properly found that the state law claims were subject to arbitration, but erred in dismissing the claims rather than staying them.  Upon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration."); *see also Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir. 2004) ("For arbitrable issues, the language of Section 3 indicates that the stay is mandatory.").  However, courts have been inconsistent on whether to dismiss or stay a case pending arbitration.  *See Valiente v. Holiday CVS, LLC*, No. 20-CV-20382, 2020 WL 2404701, at *1-3 (S.D. Fla. May 12, 2020) (reviewing caselaw within this Circuit).  Some courts have dismissed cases when all of the claims raised are arbitrable. *E.g., Olsher Metals Corp. v. Olsher*, No. 01-3212-CIV, 2003 WL 25600635, at *9 (S.D. Fla. Mar. 26, 2003) ("A case in which arbitration has been compelled may be dismissed in the proper circumstances, such as when all the issues raised in . . . court must be submitted to arbitration." (emphasis and quotation marks omitted)), *aff'd*, No. 03-12184, 2004 WL 5394012 (11th Cir. 2004).  Other courts have dismissed cases when no party requests a stay.  *E.g., McGhee v. Mariner Fin., LLC*, No. 1:19-CV-00934, 2019 WL 5491825, at *6 (N.D. Ga. Aug. 7, 2019) ("In this case,

Defendant sought dismissal of the claims in Counts 9 and 10, and did not request a stay.  Under such circumstances, the court finds that the mandate of [9 U.S.C.] § 3 does not apply and that dismissal of the claims in Counts 9 and 10, with an order to arbitrate, is the proper relief." (citation omitted)), *report and recommendation adopted sub nom.*, 2019 WL 5491811 (N.D. Ga. Sept. 5, 2019).

Here, Defendant contends that dismissal of this case is appropriate because all of the claims in the Complaint must be arbitrated.  DE 12 at 17.  Defendant further contends that there is no reason to keep this court file available for any post-arbitration proceedings because the parties must arbitrate in New York, and "if [Plaintiff] prevails in arbitration, it is likely that he will seek to confirm the award in the United States District Court for the Southern District of New York." *Id.*  Plaintiff, while disputing that his claims must be arbitrated, asks that any order compelling arbitration stay, rather than dismiss, this case so that he may return to this District Court if the arbitrator deems the Franchise Agreements' arbitration provisions unenforceable.  DE 15 at 9-10.

The Court concludes that a stay is the more appropriate procedural result in this case. Plaintiff has requested a stay, making a stay proper under 9 U.S.C. § 3.  In addition, if an arbitrator determines that the arbitration provisions are unenforceable, Plaintiff may be entitled to litigate his claim of fraudulent inducement in court, and he has already opened and paid the filing fee for this case.[3]

---

[3] Because the Court concludes that Plaintiff's claims must be arbitrated, the Court does not address the parties' Rule 12(b)(6) arguments concerning whether the Complaint states a claim upon which relief can be granted. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) (explaining that, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims").  Should the District Court disagree that Plaintiff's claims must be arbitrated, the undersigned remains available to assist in resolving the parties' Rule 12(b)(6) arguments.

### III.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendant Golden Krust Franchising, Inc.'s Motion to Dismiss [DE 12] be **GRANTED IN PART AND DENIED IN PART**.  The Court recommends that the Motion to Dismiss be granted in that the parties be compelled to arbitrate the claims Plaintiff pled in the Complaint.  The Court recommends that Defendant's request for the case to be dismissed be denied and that the case instead be stayed pending arbitration.

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(a).  The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2014).

**DONE AND SUBMITTED** in Chambers at Fort Lauderdale, Florida, this 10th day of February, 2023.

PANAYOTTA AUGUSTIN-BIRCH
UNITED STATES MAGISTRATE JUDGE